IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

| | |
|---|---|
| BANK OF ENGLAND d/b/a ENG LENDING, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 4:15cv683-SWW ) |
| TREVOR BARRETT and BARRETT FINANCIAL GROUP, LLC, | ) ) ) |
| Defendants. | ) |

This case assigned to District Judge Wright
and to Magistrate Judge Harris

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Bank of England d/b/a/ ENG Lending and for its Original Complaint against Trevor Barrett and Barrett Financial Group, LLC respectfully states as follows:

### PARTIES

1. Bank of England d/b/a ENG Lending ("Plaintiff" or "ENG") is a federally insured depository bank maintaining its headquarters and principle place of business in Arkansas.

2. Trevor Barrett ("Barrett") is, on information and belief, an individual citizen and resident of Arizona. On information and belief, Barrett is the sole Manager and Member of Barrett Financial Group, LLC and may be served with process at 1910 S. Stapley Drive, Suite 120, Mesa, AZ 85204 and/or 2168 E. Williams Field Road, Suite 245, Gilbert, AZ 85295.

3. Barrett Financial Group, LLC ("Barrett Financial") is, on information and belief, a limited liability company formed under the laws of Arizona and operating its principal place of business in Arizona. It may be served with process through its Statutory Agent

1

for Service of Process, Trevor Barrett, at 1910 S. Stapley Drive, Suite 120, Mesa, AZ 85204 and/or 2168 E. Williams Field Road, Suite 245, Gilbert, AZ 85295.

## JURISDICTION

4. The Court has subject matter jurisdiction over this matter because there is complete diversity of citizenship among Plaintiff and all Defendants and the amount in controversy exceeds the minimum required for diversity jurisdiction under 28 USC § 1332.

5. This Court also has federal question jurisdiction under 28 U.S.C. § 1331 as Plaintiff has alleged claims for violation of Title 15 of the United States Code in addition to claims under the common law of Arkansas.

6. The Court may exercise personal jurisdiction over Barrett because he maintained continuous and systematic contacts with the state of Arkansas through his employment with ENG. Moreover, as alleged below, Barrett has breached an Arkansas contract entered into with his Arkansas employer, the effect of which was felt in Arkansas. Likewise, Barrett has engaged in tortious and other wrongful activity targeted at ENG in Arkansas and causing injury to ENG in Arkansas. Similarly, the Court may exercise personal jurisdiction over Barrett Financial because it has, under the control of Barrett, aided, abetted, conspired, contributed to and participated in Barrett breaching his contract with ENG, defrauding ENG and breaching his fiduciary duties to ENG. Finally, both Barrett and Barrett Financial have misappropriated the use of www.bankofenglandmortgage.com by redirecting it to Barrett Financial's interactive website at www.barrettfinancial.com. By making this interactive website available to Arkansas residents and using it to confuse, deceive and mislead visitors to www.bankofenglandmortgage.com and cause damage to ENG by diverting ENG's

2

business, Barrett and Barrett Financial have made purposeful contacts with Arkansas that specifically give rise to this Court's personal jurisdiction.

## VENUE

7. Venue is proper in this Court pursuant to 28 USC § 1391 because a substantial portion of the events and omissions occurred in this judicial district.

## FACTS

8. ENG Lending is the mortgage division of the Bank of England, an FDIC insured depository bank existing since 1893.

9. On information and belief, Barrett has worked in the mortgage industry since 1993 including owning and operating his own mortgage companies, and United West Lending, LLC and Barrett Financial.

10. On November 8, 2011, Trevor Barrett contacted ENG's Jim Emery to discuss the possibility of partnering with ENG Lending. At the time, Barrett claimed to be a Regional Manager for Home Savings of America and requested the opportunity to do business with ENG. Barrett and Emery's discussions ultimately led to Barrett becoming an ENG Branch Manager in Mesa, Arizona.

11. Barrett executed ENG's Branch Manager Employment Agreement ("the Agreement") on March 12, 2012. Among other obligations, Barrett agreed to devote his full energies, interest, abilities and productive time to the performance of the Agreement. Barrett further agreed not to directly or indirectly plan, organize, own, manage, operate, join, control, participate in, be connected with or engage in any business competitive with ENG during the term of the Agreement. The Agreement prevents Barrett from diverting ENG business to a competitive business for a period of one year following termination.

When Barrett executed the Agreement, he confirmed that he had no conflicts of interest with ENG including a) any connection to a competitive business; b) any interest in real estate in which ENG also had a potential interest; and c) any active loan officer, broker or real estate licenses. Barrett further agreed to insure that all loan officers in his branch were paid on the origination of residential mortgages in accordance with ENG standards based upon information that Barrett supplied to ENG.

12. Despite the clear terms of the Agreement, Barrett not only maintained Barrett Financial's registration with the Arizona Secretary of State, he continued to secretly operate the company, actively marketing products and services that compete with ENG. Moreover, despite his obligations to ENG, Barrett diverted business in the form of leads and potential loans to Barrett Financial. These leads and potential loans were business opportunities belonging to ENG having been sourced from and through ENG and those acting on its behalf. The leads and potential loans also represented ENG's confidential information. The leads and potential loans were closed/originated into mortgage loans by Barrett Financial rather than ENG. Barrett Financial and Barrett, rather than ENG, reaped the economic benefit of these opportunities belonging to ENG.

13. Despite his obligations, fiduciary and contractual, to ENG, at no time did Barrett disclose to ENG that he was actively operating Barrett Financial or diverting business to Barrett Financial from ENG. Rather, Barrett took steps to conceal this fact from ENG. For example, Barrett misrepresented to ENG that he while he was maintaining Barrett Financial's registration or licensure with the state of Arizona, he was not operating the company and certainly not using it as a vehicle to compete with ENG. Likewise, Barrett misrepresented to the state of Arizona that he had ENG's approval to operate Barrett

Financial. Moreover, when questioned about this practice by loan officers in Mesa, AZ, Barrett and his brother, Sterling Barrett, misrepresented that ENG was not only aware of this practice, but had authorized it, in or der to dissuade the loan officers from reporting the practice to ENG.

14. In 2013 while employed by ENG, Barrett registered the domain name www.bankofenglandmortgage.com. After Barrett's termination for the conduct described above, Barrett Financial misappropriated ENG's presence on the world wide web and trade name by redirecting visitors to www.bankofenglandmortgage.com to www.barrettfinancial.com. This action not only confuses, deceives and misleads borrowers, consumers, business partners and the general public that ENG and Barrett Financial are affiliated, it deprives ENG of business opportunities and diverts them to Barrett Financial. Despite multiple requests to cease this practice, Barrett and Barrett Financial refuse to correct the deceitful misappropriation of www.bankofenglandmortgage.com.

## CAUSES OF ACTION

- <u>Breach of Fiduciary Duty and Conspiracy to Breach Fiduciary Duty</u>

15. During his employment as Manager, Barrett was a fiduciary to ENG. As a result, Barrett owed fiduciary duties to ENG including, but not limited to, duties of care, candor and loyalty not to act, or fail to act, to the detriment of ENG; duties of care candor and loyalty not to act in bad faith by engaging in competing ventures; duties of care, candor and loyalty not to usurp opportunities that belong to ENG; duties of care, candor and loyalty not to divert opportunities, property and assets; duties of care, candor and loyalty not to

engage in self dealing or interested transactions; and duties of care, candor and loyalty to disclose and arrest any improper conduct of which he was aware.

16. As explained above, Barrett breached his fiduciary duties to ENG by owning and operating a competing business, actively diverting business opportunities from ENG to Barrett Financial, placing his own and Barrett Financial's interests above ENG's and self-dealing in ENG's confidential information and business opportunities.

17. Barrett Financial, the entity to which Barrett diverted ENG's opportunities and business, conspired, aided, abetted, participated in and contributed to Barrett breaching his fiduciary duties to ENG.

18. The breaching of Barrett's fiduciary duties proximately caused ENG to suffer economic injuries and, accordingly, ENG is entitled to the equitable relief and damages set out below.

- <u>Breach of Contract and Conspiracy to Breach Contract</u>

19. ENG's Branch Manager Employment Agreement is a binding contract supported by mutual consideration and containing certain terms that were agreed to by both Barrett and ENG.

20. As explained above, Barrett breached the Agreement in at least the following ways: owning and operating a competing business, actively diverting business opportunities from ENG to Barrett Financial, placing his own and Barrett Financial's interests above ENG's and self-dealing in ENG's confidential information and business opportunities.

21. Barrett Financial, the entity to which Barrett diverted ENG's opportunities and business, conspired, aided, abetted, participated in and contributed to Barrett breaching the Agreement.

22. As a result of Barrett's breach of the Agreement, ENG has suffered and continues to suffer economic injuries and, accordingly, is entitled to the equitable relief and damages described below.

- <u>Fraud and Conspiracy to Defraud</u>

23. As set forth above, Barrett made false representations of material fact in executing the Agreement including, but not limited to, conflicts of interest related to Barrett Financial, his agreement not to own or participate in a competing venture. Despite his obligations of candor and loyalty, Barrett failed to disclose and actively concealed these same material facts from ENG. Barrett Financial aided, abetted, participated in and contributed to the conspiracy to defraud ENG.

24. Barrett knew his representations of these material facts were false. Likewise, Barrett knew that the failure to disclose and active concealment of these material facts was likely to deceive and in fact did deceive ENG.

25. Barrett intended to induce ENG to rely upon the false representations of material facts and failure to disclose/active concealment of the same material facts so that he could proceed with his fraudulent conduct diverting business opportunities to Barrett Financial.

26. As a result, of Barrett's conduct and ENG's reliance, ENG has suffered and continues to suffer economic injuries and, accordingly, is entitled to the equitable relief and damages described below.

- <u>Lanham Act Violations – 15 U.S.C. §1125</u>

27. By improperly directing visitors to www.bankofenglandmortgage.com to www.barrett financial.com, Barrett and Barrett Financial have used in commerce words, names,

symbols and combinations thereof in a fashion likely to cause confusion and mistake and to deceive as to affiliation, connection and association of ENG and Barrett Financial.

28. Barrett and Barrett Financial each have a bad faith intent to profit from the use of www.bankofenglandmortgage.com by stealing business opportunities that belong to ENG with its deceptive use of a domain name that is commonly used to identify ENG and the Bank of England's mortgage division.

29. Defendants' conduct relative to www.bankofenglandmortgage.com violates section 43 of the Lanham Act, 15 U.S.C. §1125, entitling Plaintiff to the damages and equitable relief described below.

- Tortious Interference With Business Expectancy

30. ENG had valid business expectancies related to the leads and potential loans that Barrett diverted to Barrett Financial.

31. Barrett and Barrett Financial had knowledge of these business expectancies and intentionally induced and/or caused disruption and termination of the expectancies proximately causing injury to ENG and entitling it to the damages and equitable relief described below.

- Unjust Enrichment

32. As set out above, Barrett and Barrett Financial received money and other valuable assets, and property to which they were not entitled.

33. Defendants received these benefits at the expense of ENG.

34. Because neither equity nor good conscious permits ENG to retain these benefits, they must be restored to ENG.

35. As a result, ENG is entitled to the damages and equitable relief described below.

## CLAIM FOR EQUITABLE RELIEF

36. Plaintiff is entitled to an equitable accounting of both Barrett and Barrett Financial from March 12, 2012 to present.

37. Plaintiff is entitled to a constructive trust on all revenues generated by Barrett Financial from March 12, 2012 to the time of judgment.

38. Plaintiff is entitled to full restitution and the disgorgement of all proceeds and benefits received by Barrett and Barrett Financial as a result of the conduct described herein.

39. Barrett and Barrett Financial should be enjoined from further use of www.bankofenglandmortgage.com.

## CLAIM FOR DAMAGES

40. As a result of the conduct complained of herein, ENG has suffered economic injuries. Accordingly, it is entitled to recover all elements of damages provided by Federal and Arkansas law including, but not limited to:

    a. actual economic damages caused by the conduct described herein, including but not limited to:

        i. lost profits in the past;

        ii. lost profits in the future;

        iii. the value of the goodwill lost in the Arizona residential lending market due to Defendants' conduct; and

        iv. the value of ENG's lost opportunities and goodwill caused by Defendants' improper use of www.bankofenglandmortgage.com.

b. Enhanced, trebled and punitive or exemplary damages as allowed by law as a result of the fraudulent, intentional, willful and deceitful conduct described herein; and

c. Costs of suit, attorneys' fees, pre-judgment and post-judgment interest at the maximum allowable rate of interest.

PRAYER

41. For the forgoing reasons, Plaintiff prays the Court enter judgment in its favor for all the relief requested herein and all other relief to which it is entitled.

Respectfully submitted,

_____
Geoffrey Culbertson
AR Bar No. 2014011
gpc@texarkanalaw.com
PATTON, TIDWELL & CULBERTSON, LLP
2800 Texas Boulevard (75503)
P. O. Box 5398
Texarkana, Texas  75505-5398
(903) 792-7080
(903) 792-8233 (FAX)

ATTORNEYS FOR PLAINTIFF